# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

PAMELA SCHLUSLER and
CARL SCHLUSLER,

        CASE NO. 06-13622

   Plaintiffs,        HON. LAWRENCE P. ZATKOFF

v.

MICHIGAN UNITED FOOD AND COMMERCIAL
WORKERS UNIONS AND EMPLOYERS HEALTH
AND WELFARE FUND,

   Defendant.
                                         /

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on June 20, 2011

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on the parties' cross motions for summary judgment [dkts 37 and 55]. Defendant's motion has been fully briefed, but Plaintiffs did not timely file a reply brief for their motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Plaintiffs' motion [dkt 37] is DENIED, and Defendant's motion [dkt 55] is GRANTED.

## II. BACKGROUND

This claim is for payment of medical benefits under the Employee Retirement Income

Security Act of 1974 ("ERISA") for the care and treatment of injuries sustained by Plaintiff Carl Schlusler ("Carl") in 2005. Carl is the husband of Plaintiff Pamela Schlusler ("Pamela"), an employee of Kroger Company ("Kroger") since 1975. Kroger participates in and contributes funds to Defendant, an entity organized for the purpose of providing medical benefits to its subscribers and their families under ERISA. Defendant is authorized to establish a plan of health and welfare benefits ("Plan") for employees of Kroger.

On February 13, 2005, Carl sustained injuries when he fell from a ladder while on real estate where his dairy farm operated. Prior to Carl receiving medical treatment, Plaintiffs assert that they sought and received pre-certification from Defendant for Carl's course of treatment. In March and April of 2005, Defendant sent questionnaire forms to Plaintiffs, requesting additional information about the circumstances of the injury and its relationship to Carl's occupation. Plaintiffs returned a form stating that Carl was at work when the injury occurred, that it occurred while Carl was working on a garage door, but that the accident was not due to his occupation. Defendants issued written denials for Plaintiffs' medical claims beginning on April 18, 2005, on the basis that the Plan excluded coverage for work-related injuries. On May 30, 2005, Plaintiffs submitted a written appeal, noting that Carl was a self-employed owner in a partnership, which excluded him from recovering workers' compensation. On June 15, 2005, Fund Manager Nessa O'Toole issued a response denying Plaintiffs' appeal, relying on Article 23, Section 2 of the Plan, which provides that the following are excluded from coverage:

> Any Injury, Illness or dental treatment for which an Eligible Employee has received or is entitled to receive benefits under a Workers' Compensation or Occupational Disease law or which arise out of or in the course of any occupation or employment.

On December 8, 2005, Plaintiffs submitted an appeal to Defendant's Board of Trustees

2

("Board"). Plaintiffs argued that (1) Carl's injury did not occur in the course of his occupation; (2) the exclusion for occupational injuries applied only to eligible employees, rather than other eligible participants; and (3) Defendants failed to send Plaintiffs Summary Plan Descriptions during the years prior to Carl's injury. With respect to Carl's injury, Plaintiffs argued that he had no duty to repair the building, but did so gratuitously on his own time. According to Plaintiffs, Carl's parents owned the building at which Carl's dairy farm operated, and he attempted to repair the door as a favor to his parents. On March 7, 2006, the Board held a meeting and discussed Plaintiffs' appeal. On March 10, 2006, O'Toole sent Plaintiffs a letter stating that the Board denied the appeal on the basis that the Plan only covered expenses incurred as a result of non-occupational injuries.[1]

On July 3, 2006, Plaintiffs filed a complaint against Defendant in Wayne County Circuit Court, seeking payment of medical benefits. Defendant removed the case to federal court on August 14, 2006. On August 23, 2007, Plaintiffs filed a motion to remand the case to the ERISA Plan Administrator in order to supplement materials relating to the ownership of the real property where Carl's injury took place. The Court granted Plaintiffs' motion on October 3, 2007. In an effort to supplement the administrative record, Carl submitted an affidavit stating the following:

(1) He is a partner of Schlusler Dairy Farms;

(2) His duties on behalf of the partnership "incorporate the milking of cows operation";

(3) On February 13, 2005, after completing the milking operation, he climbed up a ladder to inspect a recently repaired door, and then fell and injured himself;

(4) Schlusler Dairy Farm rents the property where the accident occurred, there is no written lease agreement between the property owners and the dairy farm, and the

---

[1] According to Plaintiffs, sometime between February 2005 and January 2006, the Board amended Article 23, Section 2 by substituting the words "Eligible Employee" with "Eligible Participant."

    property owners are responsible for the property; and

 (5) At the time he inspected the door, he was not in the course of his employment, and he received no profit or gain from that effort, which was gratuitous.

Plaintiffs also submitted a warranty deed for the real property, and Defendant gathered publicly available information about the partnership and real property.

On December 12, 2008, the Board reconsidered Plaintiffs' claims, along with the supplemented information. According to the minutes from that meeting, the Board acknowledged Plaintiffs' four arguments:

 (1) Carl's duties at the dairy farm included the milking of cows, and not the inspection or maintenance of the property;

 (2) The Plans' exclusion for occupational injuries only applied to eligible employees;

 (3) Coverage for Carl's injury was pre-certified by Defendant; and

 (4) Plaintiffs never received Summary Plan Descriptions.

With respect to Plaintiffs' first argument, the Board found that there was a lack of evidence that Carl's injury was unrelated to his occupation, noting that as a partner of the dairy farm, Carl could reasonably be expected to inspect a door used in the course of the farm's operation. With respect to Plaintiffs' second argument, the Board noted the Plan's general exclusion of occupational expenses for both eligible employees and other participants, and stated that the omission of the word participant from one exclusion (Article 23, Section 2) does not grant participants coverage for occupational injuries. With respect to Plaintiffs' third argument, the Board noted that pre-certification under the Plan relates to the appropriateness of proposed treatment under current medical protocols and standards, not Plan coverage and exclusions. Finally, the Board noted that Summary Plan Descriptions had been distributed periodically, either by mail or by personal delivery,

and that there had been notices regarding the non-coverage for injuries arising during the course of employment.

On March 18, 2009, Fund Manager Angela Nick mailed to Plaintiffs Defendant's written notice that their claims were denied. The letter noted that under Article 23, Section 2, and numerous other Plan provisions, the Plan excluded coverage for occupational injuries, and that the exclusion applied to eligible employees and participants. The letter also noted that evidence was lacking to conclude that Carl was not injured in the course of his employment, and that pre-certification only relates to the appropriateness of proposed medical treatment, as opposed to exclusions under the Plan.

On August 25, 2009, Plaintiffs filed another appeal with the Board, arguing again that Carl's injury was non-occupational, that Article 23, Section 2 only applied to eligible employees, and that Carl received pre-certification for his treatment. During its December 11, 2009, meeting, the Board found that the evidence supported the conclusion that Carl's act of inspecting the door was in furtherance of his dairy farm, in that the dairy farm had a financial interest in the operation of the dairy farm property. The Board also noted that Article 23, Section 2 contained two exclusionary clauses:

> Any Injury, Illness or dental treatment **[1]** for which an **Eligible Employee** has received or is entitled to receive benefits under a Workers' Compensation or Occupational Disease law or **[2]** which arise out of or in the course of any occupation or employment.

(emphasis added). According to the Board, the eligible employee limitation only modified the first clause, and not the second. The Board also noted that this conclusion was supported by other exclusions in the Plan providing that the Plan does not cover expenses for occupational injuries. Finally, the Board reiterated that Defendant's pre-certification for Carl's medical treatment did not

5

affect the applicability of Plan exclusions, such as those for occupational injuries. On December 21, 2009, Defendant mailed Plaintiffs a written notice of the denial of their claim, which reiterated the Board's conclusions. Thereafter, the parties resumed the proceedings in this Court, in which Plaintiffs challenge Defendant's denial of coverage for Carl's medical expenses.

### III. STANDARD OF REVIEW

29 U.S.C.S. § 1132(a)(1)(B) allows a suit to recover benefits due under an employee benefit plan. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where a plan grants the administrator authority to determine eligibility for benefits or to construe the terms of the plan, courts review the plan administrator's decision under an "arbitrary and capricious" standard of review. *See Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 2005) (citing *Bruch*, 489 U.S. at 115).

Since the parties agree that the Plan provided Defendant discretionary authority to determine eligibility for benefits and to construe the terms of the Plan, the Court reviews Defendant's denial under an arbitrary and capricious standard. "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action." *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (citation and internal quotation marks omitted), cert. denied, 495 U.S. 905 (1990). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis*, 887 F.2d at 693 (citation and internal quotation marks omitted). In determining whether Defendant's denial of benefits was arbitrary and capricious, the Court will conduct its review based solely upon the administrative

record and "render findings of fact and conclusions of law accordingly." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618–19 (6th Cir. 1998).

## IV. ANALYSIS

### 1. Eligible Employee

Plaintiffs first argue that Defendant arbitrarily and capriciously concluded that the Plan's exclusion for occupational injuries applied to both eligible employees and other participants. According to Plaintiffs, Article 23, Section 2 clearly states that the exclusion only applies to eligible employees, and that Carl was not an eligible employee of Kroger at the time of his injury. Plaintiffs also state that Article 23, Section 2 is ambiguous, and that the Court should apply the principle of *contra proferentum* and construe the ambiguity in Plaintiffs' favor.

Plaintiffs' arguments, however, are without merit. First, Plaintiffs' argument is contradictory, in that they claim Article 23, Section 2 clearly states that the occupational injury exclusion applies only to eligible employees, but then argue that the language is ambiguous. Second, the principle of *contra proferentum* is inapplicable to the review of an ERISA plan's denial of benefits under the arbitrary and capricious standard. *See Mitzel v. Anthem Life Ins. Co.*, 351 Fed. Appx. 74, 83 (6th Cir. 2009) ("[I]n cases such as this one, in which the administrator's denial of benefits is reviewed under the arbitrary and capricious standard because of the discretion conferred by the Plan, we believe that invoking the rule of *contra proferentem* undermines the arbitrary and capricious standard of review."). "Under the arbitrary and capricious standard, courts must favor a plan administrator's interpretation over an equally reasonable contrary interpretation." *Id.* (citations omitted).

In order to find that Defendant's determination—that the occupational injury exclusion

7

applied to both eligible employees and other participants—was arbitrary and capricious, it must have been irrational in light of the Plan's provisions. After reviewing the administrative record, the Court concludes that Defendant's determination was rational in light of the Plan's provisions. As Plaintiffs acknowledge, the language in Article 23, Section 2 is not clear, meaning that it could reasonably be interpreted in two ways. Defendant interpreted the language as having two clauses, only one of which was modified by the words "Eligible Employee." Not only was this a reasonable interpretation of the language of Article 23, Section 2, but Defendant determined that interpretation to be consistent with other Plan provisions stating that participants were not covered for occupational injuries. Accordingly, the Court finds that Defendant's interpretation was not arbitrary and capricious.

**2.      Non-Occupational Injury**

Plaintiffs also maintain that Defendant arbitrarily and capriciously determined that Carl's injuries arose during the course of his employment. In support of this, Plaintiffs state the following:

(1)     Carl was a dairy farmer working for a partnership of which he was a member;

(2)     His occupational duties for the partnership included milking cows;

(3)     The injury occurred on a Sunday afternoon while he was on break from his normal duties;

(4)     The injury occurred while he was inspecting the building, rather than repairing it;

(5)     Neither Carl nor the partnership had an ownership interest in the property;

(6)     Carl's parents owned the property, and Carl inspected the building as a favor to his mother;

(7)     Neither Carl nor the partnership have an obligation to maintain the building;

(8)     Carl was not paid to inspect the building; and

8

      (9)      Neither Carl nor the partnership benefitted from his inspection.

While these assertions, if true, may support a conclusion contrary to that reached by Defendant, they are insufficient to demonstrate that Defendant's decision was arbitrary and capricious. According to the administrative record, there is evidence that Carl's responsibilities on behalf of the partnership included milking cows, but there is no evidence that those were his only responsibilities. Considering that Carl was an owner of the partnership, the assertion that he maintained such a limited role in its operation seems doubtful. Plaintiffs also make much of the fact that the injury occurred on a Sunday, but Plaintiffs also acknowledge that Carl was working in furtherance of the partnership immediately prior to the accident. Furthermore, the fact that neither Carl nor the partnership owned the property in question does not render Defendant's decision arbitrary and capricious. Defendants reasonably concluded that despite an ownership interest in the property, the partnership, and Carl, as an owner, stood to benefit from the proper maintenance of the dairy farm at which the partnership operated. Thus, Defendant's decision that Carl's injury arose during the course of his employment was not arbitrary and capricious.

### 3. Pre-Certification

Next, Plaintiffs assert that Defendant should be estopped from denying benefits because Plaintiffs received pre-certification from Defendant, which authorized Carl's medical treatment. According to Plaintiffs, the Plan's provisions provide that "pre certification for treatment allows the participant an opportunity to learn in advance of treatment, whether or not the course of treatment is covered."

However, Plaintiffs have failed to demonstrate that Defendant's determination that pre-certification only relates to the appropriateness of proposed medical treatment, as opposed to the

applicability of exclusions under the Plan, was irrational in light of the Plan's provisions. Plaintiffs' summary of pre-certification, noted *supra*, even supports Defendant's determination, in that it relates to whether or not the "course of treatment" is covered. Plaintiffs have identified no Plan provisions supporting the conclusion that by granting pre-certification for a health care provider to provide medical treatment, Defendant waived all rights to assert other Plan exclusions. Therefore, Plaintiffs have failed to demonstrate that Defendant's pre-certification of Carl's medical treatment precluded it from later denying benefits based on Plan exclusions.

**4.     Summary Plan Descriptions**

Finally, Plaintiffs argue that Defendant failed to provide them with Summary Plan Descriptions in the years prior to Carl's injury. However, Plaintiffs declined to rebut Defendant's argument that the remedy for such a failure is not the payment of medical benefits. *See Bolone v. TRW Sterling Plant Pension Plan*, 130 Fed. Appx. 761, 766 (6th Cir. 2005) (citing *Lewandowski v. Occidental Chem. Corp.*, 986 F.2d 1006, 1008 (6th Cir. 1993) (holding that failure to provide a plan beneficiary with documents as required under the Act does not give rise to a substantive remedy)). Plaintiffs also declined to rebut Defendant's argument that Plaintiffs were, in fact, provided with Summary Plan Descriptions prior to Carl's injury. Moreover, Plaintiffs stipulated that they are not asserting any ERISA procedural challenges. Thus, the Court finds that the alleged failure to provide Summary Plan Descriptions is an insufficient basis upon which to award benefits.

## V. CONCLUSION

Accordingly, for the above reasons, IT IS HEREBY ORDERED that Plaintiffs' motion for summary judgment [dkt 37] is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment [dkt 55] is GRANTED.

IT IS SO ORDERED.

        S/Lawrence P. Zatkoff
        LAWRENCE P. ZATKOFF
        UNITED STATES DISTRICT JUDGE

Dated: June 20, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 20, 2011.

        S/Marie E. Verlinde
        Case Manager
        (810) 984-3290